**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | | |
|---|---|---|
| **DANIEL ALBERT LONEY,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| | : | **Case No. 1:24-cv-411-JPH** |
| **vs.** | : | |
| | : | **Judge Jeffrey P. Hopkins** |
| **LARRY HOOK,** *et al.,* | : | |
| | : | |
| **Defendants.** | : | |
| | : | |
| | : | |

---

## DEFENDANT JEFFREY WEBER'S AND DEFENDANT HAMILTON COUNTY SHERIFF'S OFFICE'S MOTION TO DISMISS PURSUANT TO FRCP 12(b)

Now come Defendants Jeffrey Weber and Hamilton County Sheriff's Office, and hereby moves this Court to dismiss Plaintiff's Complaint for the reasons stated in the attached Memorandum in Support.

MELISSA A. POWERS
HAMILTON COUNTY PROSECUTOR

*/s/ Jerome A. Kunkel*
Jerome A. Kunkel (39562)
Kathleen C. Fischer (87937)
Bennet S. Weaver (102279)
Assistant Prosecuting Attorneys
230 E. Ninth Street, Suite 4000
Cincinnati, Ohio 45202
(513) 946-3103 (Kunkel)
(513) 946-3108 (Fischer)
(513) 946-3135 (Weaver)
Fax (513) 946-3018
Jerry.Kunkel@hcpros.org
Kathleen.Fischer@hcpros.org
Bennet.Weaver@hcpros.org
*Attorneys for Defendants Jeffrey Weber*
*and Hamilton County Sheriff's Office*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 12, 2024, a copy of this Motion to Dismiss and accompanying Memorandum in Support were filed with the Clerk of Court through the Court's CM/ECF system such that all parties received service thereof consistent with S.D. Ohio Civ. R. 5.2(b), including:

Richard Ganulin
Attorney for Plaintiff Daniel Albert Loney

Bryan J. Mahoney, with Freund, Freeze & Arnold
Attorney for Defendants Larry Hook, Katie Stewart, Sara Jonas,
and Forest Hills Local School District Board of Education

MELISSA A. POWERS
HAMILTON COUNTY PROSECUTOR

*/s/ Jerome A. Kunkel*
Jerome A. Kunkel (39562)
Kathleen C. Fischer (87937)
Bennet S. Weaver (102279)
*Attorneys for Defendants Jeffrey Weber*
*and Hamilton County Sheriff's Office*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | | |
|---|---|---|
| **DANIEL ALBERT LONEY,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| | : | **Case No. 1:24-cv-411-JPH** |
| **vs.** | : | |
| | : | **Judge Jeffrey P. Hopkins** |
| **LARRY HOOK,** *et al*., | : | |
| | : | |
| **Defendants.** | : | |
| | : | |
| | : | |

---

## MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

---

MELISSA A. POWERS
HAMILTON COUNTY PROSECUTOR

Jerome A. Kunkel (39562)
Kathleen C. Fischer (87937)
Bennet S. Weaver (102279)
Assistant Prosecuting Attorneys

*Attorneys for Defendants Jeffrey Weber*
*and Hamilton County Sheriff's Office*

This case concerns a citizen's dispute with the Forest Park Local School District Board of Education and its rules governing decorum at public meetings. Deputy Jeffrey Weber and the Hamilton County Sheriff's Office have no dog in that fight. In turn, the Complaint fails to state a claim against Deputy Weber or the Hamilton County Sheriff's Office.

## I. FACTUAL AND PROCEDURAL HISTORY

During a public comment period held on March 20, 2024, Plaintiff Daniel Loney ("Plaintiff" or "Loney") spoke to members of the Forest Park Local School District Board of Education ("the Board"). [*See* Complaint, ECF No. 1 at Page ID 2-3, 9-11]. The Board had previously adopted rules that govern, among other things, the manner in which citizens can address the Board during public comment periods. [*See id*. at Page ID 7, 11-13]. Based on those Board rules, the Board determined Plaintiff was out of order at the March 20 meeting. [*See id*. at Page ID 9-13]. Therefore, the Board directed Plaintiff to conclude his comments and to leave the premises. [*See id*. at Page ID 10-11]. When Plaintiff refused, the Board called upon Deputy Jeffrey Weber ("Deputy Weber") to escort Plaintiff from the premises. [*See id*.].[1] Accordingly, Deputy Weber approached the podium. [*See id*.]. Plaintiff initially attempted to "call this bluff" and refused the Board's order to leave the premises. [*Id*.]. In compliance with the Board's directive, Deputy Weber attempted to have Plaintiff leave the premises and stated, "Let's go." [*Id*.]. When Plaintiff disregarded Deputy Weber and continued to address the Board, Deputy Weber placed his hand on Plaintiff's shoulder and repeated, "Let's go." [*Id*.]. When Plaintiff, for a second time, disregarded Deputy Weber and continued to address the Board, Deputy Weber stated, "Let's go. I'm not going to ask you again." [*Id*.]. Plaintiff refused for a third time. [*See*

---

[1] Deputy Weber is a volunteer with the Hamilton County Sheriff's Office ("HCSO"); he was present at the March 20 meeting as a Special Deputy independently employed by the Forest Park Local District Board of Education. [*See id*. at Page ID 7, 15-16].

*id*.]. Deputy Weber then tugged on Plaintiff's elbow and repeated, "Let's go." [*Id*.]. Plaintiff complied and left the premises without further incident. [*See id*.].

On July 31, 2024, Plaintiff filed the instant Complaint, alleging that the Board and some of its members violated his First and Fourteenth Amendment rights by adopting facially unconstitutional rules and by applying those rules in an arbitrary and retaliatory manner. [*See id*. at Page ID 17-20]. Specifically, the Complaint alleges that the Board's rules, as a facial matter and as applied at the March 20 meeting, violate the First Amendment because they are vague, overbroad, and viewpoint-based. [*See id*. at Page ID 17-19]. In addition, the Complaint alleges that the Board applied the rules in an arbitrary manner in violation of the Fourteenth Amendment. [*See id*. at Page ID 19-20]. The Board Defendants filed an Answer on August 21, 2024. [Board Defendants' Answer, ECF No. 5].

But Plaintiff also tacked on claims against Deputy Weber and HCSO. [*See* Complaint, ECF No. 1 at Page ID 19-21]. According to Plaintiff, Deputy Weber violated his First and Fourteenth Amendment rights merely by escorting Plaintiff off the premises at the direction of the Board (*i.e.*, based on the Board's independent finding that Plaintiff did not comply with the Board's public-meeting rules and was therefore out of order). [*See id*.]. In addition, Plaintiff claims HCSO violated his constitutional rights by failing to adopt a policy that would require deputies acting as security at public meetings to challenge a county board's real-time determination of whether a speaker has complied with that board's rules for governing public meetings. [*See id*.].

As for relief, Plaintiff does not request monetary damages; he seeks only declaratory and injunctive relief. [*See id*. at Page ID 21-22]. Although Plaintiff's prayer for relief mentions "declaratory judgment," the relief sought with respect to Deputy Weber and HCSO is solely

3

prospective in nature and is framed as a request for a preliminary injunction. [*See id*.] Specifically, Plaintiff requests a "preliminary and permanent injunction" to enjoin all Defendants from violating his constitutional rights "when he speaks at a Forest Hills Board of Education meeting," requiring him to comply with the Board's public-meeting rules, and removing him from public meetings based on violations of those rules. [*Id*. at Page ID 21]. In addition, Plaintiff asks this Court to

> [e]nter a declaratory judgment, and a preliminary and permanent injunction, requiring that the Forest Hills Board of Education and the Hamilton County Sheriff's Office promptly adopt policies and procedures that are not void for vagueness or overbreadth, do not confer unfettered discretion, and that otherwise confer on citizen speakers the right to exercise First Amendment free speech freedoms including passionately expressing his views without fear of unconstitutional retribution.

[*Id*. at Page ID 21-22]. With respect to the Board Defendants, Plaintiff requests the Court to enter a declaratory judgment and a preliminary and permanent injunction holding that the Board's rules of decorum are unconstitutional. [*See id*. at Page ID 21].

## II.     STANDARD OF REVIEW

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must allege "sufficient factual matter . . . to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up). A "plausible" claim for relief requires more than "a sheer possibility that a defendant has acted unlawfully." *Id.* (citation omitted). To meet this pleading standard, a complaint must contain "either direct or inferential allegations respecting all material elements to sustain a recovery under some viable legal theory." *Terry v. Tyson Farms, Inc.*, 604 F.3d 272, 275-76 (6th Cir. 2010) (citation omitted). And "conclusory allegations or legal conclusions masquerading as factual allegations will not suffice." *Id.* at 276 (cleaned up). In short, an action will be dismissed where "there is no law to support the claims made" or "the

4

facts alleged are insufficient to state a claim." *Stew Farm, Ltd. v. Nat. Res. Conservation Serv.*, 967 F. Supp. 2d 1164, 1169 (S.D. Ohio 2013). True, "[i]n reviewing a motion to dismiss, [the Court] construe[s] the complaint in the light most favorable to the plaintiff, draw[s] all reasonable inferences in its favor, and accept[s] all well-pleaded allegations in the complaint as true." *Keene Grp., Inc. v. City of Cincinnati*, 998 F.3d 306, 310 (6th Cir. 2021). But that does not mean the Court must take everything plaintiffs allege as gospel, no matter how unsupported. The Court may disregard "naked assertions" of fact or "formulaic recitations of the elements of a cause of action." *Iqbal*, 556 U.S. at 678 (cleaned up).

## III. ANALYSIS

Plaintiff has not adequately pleaded claims for relief against Deputy Weber or HCSO. Notably absent from the Complaint is a Fourth Amendment claim. Thus, Plaintiff does not take issue with the manner in which he was escorted from the premises by Deputy Weber. Instead, the Complaint demonstrates that Plaintiff's true grievance concerns the rules adopted by the Board and the way in which the Board applied those rules at the March 20 public meeting. That reality is further reflected in Plaintiff's prayer for relief. Indeed, Plaintiff seeks to enjoin Deputy Weber from enforcing *the Board's* rules and asks HCSO to adopt a policy requiring its deputies to second-guess *the Board's* determinations during public meetings. At bottom, the claims asserted against Deputy Weber and HCSO must be dismissed.

Plaintiff alleges that Deputy Weber and HCSO deprived him of his constitutional rights in violation of 42 U.S.C. § 1983. Section 1983 provides in relevant part: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and

laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . ." Thus, to state a claim under 42 U.S.C. § 1983 and therefore survive a motion to dismiss, the plaintiff must sufficiently allege (1) that the defendant acted under color of state law and (2) that the defendant deprived the plaintiff of rights secured under federal law. *Bloch v. Ribar*, 156 F.3d 673, 677 (6th Cir. 1998). When multiple defendants are involved, a plaintiff must state a claim with sufficient particularity as to each defendant and may not simply lump all defendants together. *Marcilis v. Twp. of Redford*, 693 F.3d 589, 596-97 (6th Cir. 2012); *Lang v. City of Kalamazoo*, 744 F. App'x 282, 292 (6th Cir. 2018). The claims against Deputy Weber will be addressed first, followed by the claims against HCSO.

### A.     The Complaint Fails to State a Claim against Deputy Weber

As an initial matter, Plaintiff named Deputy Weber in both his individual and official capacities. [*See* Complaint, ECF No. 1]. Claims against a public official in his or her official capacity are generally treated as against the relevant entity or policymaker. *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985). Therefore the official-capacity claims against Deputy Weber are addressed in the section concerning the claims against HCSO.

In addition, the Complaint fails to state a claim for relief against Deputy Weber in his individual capacity. Deputy Weber does not dispute that he was acting under color of state law when he followed the Board's directive and escorted Plaintiff from the premises. However, Deputy Weber does contend Plaintiff has not sufficiently alleged that Deputy Weber violated Plaintiff's constitutional rights. Plaintiff alleges that Deputy Weber violated his First and Fourteenth Amendment rights. The First Amendment claim is addressed first, followed by the claim arising under the Fourteenth Amendment.

6

### 1. First Amendment Retaliation

Plaintiff claims he was ruled out of order and removed from the public meeting in retaliation for his protected speech. To have plausibly pled a First Amendment retaliation claim, the Complaint must have pled facts showing "(1) that [Plaintiff] engaged in First Amendment protected activity; (2) that [Deputy Weber] undertook 'an adverse action' that would deter 'a person of ordinary firmness from continuing to engage in that conduct'; and (3) that there is a 'causal connection' between [Plaintiff's] protected activity and [Deputy Weber's] adverse action." *MacIntosh v. Clous*, 69 F.4th 309, 315 (6th Cir. 2023) (quoting *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc)).

Deputy Weber does not dispute that by engaging in public comment at a public meeting before the Board, Plaintiff was engaging in protected conduct under the First Amendment.[2] However, Deputy Weber does contend that Plaintiff has not sufficiently pleaded the second and third elements: that Deputy Weber took adverse action against Plaintiff and that there is a causal connection between Plaintiff's protected activity and the alleged adverse action. In addition, Plaintiff's First Amendment retaliation claim against Deputy Weber fails as a matter of law.

### a. No Adverse Action

"The term 'adverse action' arose in the employment context and has traditionally referred to actions such as 'discharge, demotions, refusal to [hire], nonrenewal of contracts, and failure to promote." *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 724 (6th Cir. 2010)

---

[2] To be clear, whether Plaintiff's conduct is protected for purposes of a First Amendment retaliation claim is a separate and distinct inquiry from whether the Board's rules governing public meetings are constitutional and whether Plaintiff's conduct constituted a violation of those rules. As discussed throughout this Memorandum, Deputy Weber and HCSO are not responsible for adopting rules governing decorum at public meetings, let alone making real-time determinations of whether someone has violated those rules. Instead, Deputy Weber merely acknowledges that engaging in public commentary at a public meeting before a county board is, generally, protected conduct for purposes of a First Amendment retaliation claim. *See Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 723 (6th Cir. 2010).

(quoting *Thaddeus-X*, 175 F.3d at 396). In the First Amendment context, "any action that would deter a person of ordinary firmness from exercising protected conduct will [constitute a sufficient adverse action], which may include harassment or publicizing facts damaging to a person's reputation." *Id*. But "[w]hen a plaintiff's alleged adverse action is 'inconsequential,' resulting in nothing more than a 'de minimis injury,' the claim is properly dismissed as a matter of law." *Wurzelbacher v. Jones-Kelley*, 675 F.3d 580, 584 (6th Cir. 2012) (quoting *Bell v. Johnson*, 308 F.3d 594, 603 (6th Cir. 2002)); *see also Maben v. Thelen*, 887 F.3d 252, 266 (6th Cir. 2018) ("some adverse actions are so *de minimis* that they do not rise to the level of a constitutionally cognizable injury"). Indeed, "it would trivialize the First Amendment to hold that harassment for exercising the right of free speech was always actionable no matter how unlikely to deter a person of ordinary firmness from that exercise." *Thaddeus-X*, 175 F.3d at 397 (quoting *Bart v. Telford*, 677 F.2d 622, 625 (7th Cir. 1982)).

The Sixth Circuit explained in *Mezibov v. Allen*, 411 F.3d 712 (6th Cir. 2005), that courts "are required to tailor the analysis under the adverse action prong to the circumstances of the specific retaliation claim." *Id*. at 721 (cleaned up). For example, in *Mezibov* the Circuit considered whether defamatory comments made against a criminal defense attorney by a prosecutor in retaliation for the defense attorney's filing of motions qualified as an adverse action. *See id*. at 715-16. The court concluded that "the appropriate formulation of the 'adverse action' prong in [this] case is whether the alleged defamation would deter a criminal defense attorney of ordinary firmness from continuing to file motions and vigorously defend his client." *Id*. at 721.

Importantly, Plaintiff does not allege that Deputy Weber threatened him with arrest; he alleges that certain Board members requested that he be arrested. [Complaint, ECF No. 1 at Page

8

ID 10 ("the Superintendent, the Board President, and the Board Vice-President ordered Loney removed from the premises by the HCSO Deputy Sheriff and threatened Loney with arrest. As Loney was being escorted out, the Board Vice-President said: 'Please arrest him.'")]. Thus, applying *Mezibov* to the alleged adverse action by Deputy Weber, Plaintiff must demonstrate that being escorted from a public meeting without a threat of arrest would have deterred a citizen-parent of ordinary firmness from speaking before a board of education at future public meetings. Plaintiff cannot do so.

Being removed from a public meeting based on a board of education's finding that the speaker had violated the rules of decorum would not deter a citizen-parent of ordinary firmness from speaking before that board at future public meetings. Consider examples of no-adverse-action findings from district courts within the Sixth Circuit that arise in the public-meeting context. In *Cook v. Greenleaf Twp.*, the district court refused to find "adverse action" where a township board member pretended to videotape the plaintiff in a mocking manner and cut her off from speaking at a public meeting. No. 16-cv-14060, 2018 U.S. Dist. LEXIS 81134, at *14-15 (E.D. Mich. May 15, 2018). In *Timmon v. Robinson*, the district court determined that the loss of twenty seconds of speaking time at a city council meeting was "a trivial deprivation." No. 1:10-cv-823, 2011 U.S. Dist. LEXIS 98184, at *14 (W.D. Mich. Aug. 17, 2011). And, most notably, the district court in *Biggs-Leavy v. Lewis* determined that the city council's order to remove a speaker from a public meeting did not constitute adverse action. No. 23-cv-12123, 2024 U.S. Dist. LEXIS 46575, at *20-21 (E.D. Mich. Mar. 15, 2024). Because a presiding official's removal order itself does not constitute adverse action, neither can an officer's removal of the speaker in compliance with that order.[3] By the same token, the Sixth Circuit has declined to find

---

[3] This is true insofar as an officer uses reasonable force (assuming force is used) in removing the speaker from the premises, consistent with the Fourth Amendment. *See Youkhanna v. City of Sterling*

adverse action where the conduct was more egregious than that alleged by Plaintiff. *See Stolle v. Kent State University*, 610 F. App'x 476, 484 (6th Cir. 2015) (finding no adverse action where "1) [plaintiff] was verbally reprimanded for communicating with state legislators; 2) he was ordered to cease all communications with state legislators; 3) he was led to believe that if he continued such communications he would lose his job; and 4) he was told to discontinue attendance at meetings of the State Committee of Financial Literacy"). In light of the foregoing precedent, as a matter of law Plaintiff did not suffer an adverse action when he was asked by Deputy Weber to leave the meeting for violating the Board's rules of decorum. *See Biggs-Leavy*, 2024 U.S. Dist. LEXIS 46575, at *20-21 ("Common sense dictates that ordinarily firm community organizers will speak, or at least attempt to speak, at municipal meetings regardless of whether they have previously removed from a meeting of the same municipal body.").

### b.    No Causal Connection

Even if Plaintiff's removal from the meeting constitutes adverse action, Plaintiff has not sufficiently pled a causal connection between Deputy Weber's supposed retaliatory animus and Plaintiff's removal from the meeting. "[A]ction colored by some degree of bad motive does not amount to a constitutional tort if that action would have been taken anyway." *Hartman v. Moore*, 547 U.S. 250, 260 (2006). As more recently explained by the Supreme Court,

> a plaintiff must establish a "causal connection" between the government defendant's "retaliatory animus" and the plaintiff's "subsequent injury." It is not enough to show that an official acted with a retaliatory motive and that the plaintiff was injured — the motive must cause the injury. Specifically, it must be a "but-for" cause, meaning that the adverse action against the plaintiff would not have been taken absent the retaliatory motive.

*Heights*, 934 F.3d 508, 523-24 (6th Cir. 2019) (holding officer's use of "guiding force" in removing speaker from public meeting, after speaker was ruled out of order by presiding official and therefore lost her privilege to remain on the premises, did not constitute a seizure under the Fourth Amendment) (quoting *Salmon v. Blesser*, 802 F.3d 249, 253 (2d Cir. 2015)). Whether Deputy Weber used reasonable "guiding force" in removing Plaintiff from the meeting is not at issue in this case, as Plaintiff has not alleged any violation of the Fourth Amendment.

*Nieves v. Bartlett*, 587 U.S. 391, 398-99 (2019) (quoting *Hartman*, 547 U.S. at 259-60).

Here, Plaintiff has not adequately alleged that Deputy Weber removed him from the meeting based on the content or viewpoint of his speech. For example, Plaintiff alleges that "the Forest Hills Defendants, *assisted by the Hamilton County Sheriff's Office Defendants*, intentionally and unconstitutionally retaliated against the viewpoint of Loney's protected expression." [Complaint, ECF No. 1 at Page ID 8 (emphasis added)]. That is not the same as claiming that Deputy Weber *himself* removed Plaintiff from the premises based on the content of Plaintiff's speech. Indeed, other allegations in the Complaint make clear that Deputy Weber was operating at the direction of the Board rather than based on the content or viewpoint of Plaintiff's speech. [*See id*. at Page ID 10 (noting "the Superintendent, the Board President, and the Board Vice-President ordered Loney removed from the premises by the HCSO Deputy Sheriff"); *see also id*. ("The Forest Hills Defendants had no right to request that Defendant Weber evict and arrest Loney.")]. Also, Plaintiff has failed to explain why Deputy Weber would even take issue with the content of Plaintiff's speech. That is, Plaintiff was criticizing the Board's spending decisions; he was not criticizing Deputy Weber or HCSO. *Contrast with Frenchko v. Monroe*, 672 F. Supp.3d 421, 455-57 (N.D. Ohio 2024) (concluding a jury could infer that commissioner's arrest was caused by her highly critical comments *about sheriff and his jail-management policies* at public board meeting), *appeal filed*, No. 24-3116 (6th Cir. Feb. 14, 2024).

At bottom, Plaintiff has failed to plausibly allege that his removal from the meeting would not have occurred absent a retaliatory motive by Deputy Weber. *See Nieves*, 587 U.S. at 398-99; *Hartman*, 547 U.S. at 260. The Complaint demonstrates that Deputy Weber's personal take on the content of Plaintiff's speech was irrelevant; he would have nonetheless removed

11

Plaintiff from the public meeting due to the Board's removal order. And to the extent Plaintiff has plausibly alleged viewpoint discrimination *by the Board*, that is insufficient to make out a claim against Deputy Weber. *Iqbal*, 556 U.S. at 676 ("Because vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."); *see, e.g.*, *Gilmore v. Beveridge*, No. 2:22-cv-02032-HLT-RES, 2022 U.S. Dist. LEXIS 210016, at *14-15 (D. Kan. Nov. 18, 2022) (granting motion to dismiss where officers removed the speaker at the direction of the official presiding over the public meeting, noting that "[t]o the extent [plaintiff] has alleged plausible viewpoint discrimination by [the board member], there are no facts suggesting that [the officers] acted for any other reason than [the board member] instructed them to act.") (emphasis in original).

Relatedly, other courts have recognized the causal mismatch with holding the so-called enforcer of public-meeting rules liable for a presiding official's determination that a speaker is noncompliant with the board's rules. *See Gilmore*, 2022 U.S. Dist. LEXIS 210016, at *11-17; *Heaney v. Roberts*, 846 F.3d 795, 803-04 (5th Cir. 2017) (holding that an officer has no reason to believe he is violating a speaker's First Amendment rights by following the presiding official's removal order, and that the officer is not required to second-guess the presiding official regarding his First Amendment motives prior to acting) (citing *Collinson v. Gott*, 895 F.2d 994, 997 (4th Cir. 1990)); *Gonzales v. Dankel*, No. 4:22-cv-416, 2024 U.S. Dist. LEXIS 104437, at *18-24 (E.D. Tex. June 12, 2024) (concluding based on *Heaney* that it was reasonable for officers to remove speakers from public meeting at direction of school board president presiding over meeting); *Osborne v. Lohr-Robinette*, No. 1:05-0106, 2006 U.S. Dist. LEXIS 92275, at *19 (S.D. W.Va. Dec. 20, 2006) (concluding based on *Collinson* that it was reasonable for officer to

remove speaker from public meeting at direction of mayor presiding over meeting). Although outside the context of a public meeting before a county board, the Sixth Circuit has recognized a similar principle. *See Couzens v. City of Forest Park*, --- F.4th ----, No. 23-3930, 2024 U.S. App. LEXIS 21671 (6th Cir. Aug. 27, 2024) (concluding ousted-pastor's First and Fourth Amendment claims failed because the off-duty officers, relying on a letter that described a vote to remove the pastor under church law and was signed by church leaders, were simply attempting to enforce the congregation's decision to oust the pastor). Here, the allegations in the Complaint demonstrate that in escorting Plaintiff from the premises, Deputy Weber relied on the Board's removal order, not the content of Plaintiff's speech.

Even if Plaintiff has plausibly alleged adverse action and causation, Plaintiff's First Amendment retaliation claim still fails as a matter of law. A county board's determination that a speaker is out of order provides an officer with an independent justification to remove the speaker from the premises. *See Leonard v. Robinson*, 477 F.3d 347, 361 (6th Cir. 2007) ("We therefore hold that no reasonable officer would find that probable cause exists to arrest a recognized speaker at a chaired public assembly based solely on the content of his speech (albeit vigorous or blasphemous) *unless and until the speaker is determined to be out of order by the individual chairing the assembly*.") (emphasis added); *see also Burton v. City of Detroit*, No. 20-cv-12182, 2022 U.S. Dist. LEXIS 28483, at *13-16 (E.D. Mich. Feb. 16, 2022) (holding officers had probable cause to arrest plaintiff-speaker based on out-of-order rulings from presiding officer, defeating both Fourth Amendment and First Amendment retaliation claims) (citing *Leonard*, 477 F.3d at 361), *affirmed*, No. 22-1222, 2022 U.S. App. LEXIS 32566 (6th Cir. Nov. 23, 2022); *Bernard v. Detroit Pub. Sch. Dist.*, No. 12-cv-13992, 2015 U.S. Dist. LEXIS 59108, at *23-24 (E.D. Mich. May 6, 2015) (finding that in arresting plaintiff-speaker, "the officers

could reasonably have relied on [the board president's] determination that [plaintiff-speaker] was out of order") (citing *Leonard*, 477 F.3d at 361). Indeed, "protected speech is often a wholly legitimate consideration for officers when deciding whether to make an arrest." *Nieves*, 587 U.S. at 401 (quotations omitted). Even if it is arguable whether an officer has probable cause to arrest a speaker based solely on a county board's out-of-order ruling, at a minimum an officer can rely on the board's determination as a basis for the lesser action of removing the speaker from the meeting, so long as any force used during the removal is reasonable. *See Youkhanna*, 934 F.3d at 523. To hold otherwise would incentivize officers to favor arresting speakers that have been ruled out of order by a county board in order to insulate themselves from First Amendment retaliation claims that hinge on allegations concerning the officer's intent—allegations that are "easy to make and difficult to disprove," *Gonzalez v. Trevino*, 144 S. Ct. 1663, 1670 (2024) (Alito, J., concurrence), but are otherwise irrelevant in the Fourth Amendment probable cause analysis, *see Devenpeck v. Alford*, 543 U.S. 146, 153-55 (2004).

To be clear, the First Amendment generally does not countenance the arrest of a person for engaging in protected speech. *See Sandul v. Larion*, 119 F.3d 1250, 1256 (6th Cir. 1997); *but see Novak v. City of Parma*, 932 F.3d 421, 430 (6th Cir. 2019) (noting that *Sandul*'s apparent holding is hard to square with the Supreme Court's more recent pronouncements that "protected speech can be a wholly legitimate consideration for officers when they decide whether to arrest someone") (quotations and citations omitted). But as discussed, where a presiding official has declared the speaker out of order, the officer has a legitimate basis to at least remove the speaker from the premises. The out-of-order ruling from the presiding official makes all the difference. *See Leonard*, 477 F.3d at 361 ("unless and until the speaker is determined to be out of order by the individual chairing the assembly"); *compare Burton*, 2022 U.S. Dist. LEXIS 28483, at *14-

14

17 (being ruled out of order three times provided probable cause to arrest and therefore defeated First Amendment retaliation claim) *and Gilmore*, 2022 U.S. Dist. LEXIS 210016, at *16 n.10 (noting "[the plaintiff's] removal was directed by [the board member] and was not spontaneously undertaken by [the officers]"), *with Frenchko*, 672 F. Supp.3d at 458 (distinguishing *Burton* because the commissioner who chaired the meeting "did not rule [plaintiff] out of order and admitted that he did not make that determination") *and Ritchie v. Coldwater Cmty. Schs.*, 947 F. Supp.2d 791, 814 (W.D. Mich. 2013) (finding First Amendment retaliation claim turned in part on the school board president's testimony that "she never declared [plaintiff] out of order at any School Board meeting"); *cf. Youkhanna*, 934 F.3d at 523 (concluding the reasonableness of the removal of a speaker from a public meeting hinges on whether "the person's behavior violated *a rule*, ordinance, or law") (emphasis added). Here, the allegations in the Complaint demonstrate that the Board ruled Plaintiff out of order and that Plaintiff thrice ignored Deputy Weber's requests to leave the premises in accordance with the Board's directive. Under the set of facts pleaded in the Complaint, Plaintiff's First Amendment retaliation claim against Deputy Weber fails as a matter of law.

### 2.    Fourteenth Amendment Equal Protection

Next, Plaintiff claims that Deputy Weber violated his Fourteenth Amendment right to equal protection. To state a Fourteenth Amendment equal protection claim, a plaintiff "must plausibly allege 'that the government treated the plaintiff disparately as compared to similarly situated persons and that such disparate treatment either burdens a fundamental right, targets a suspect class, or has no rational basis.'" *Courser v. Allard*, 969 F.3d 604, 617 (6th Cir. 2020) (quoting *Ctr. for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 379 (6th Cir. 2011)); *see also Engquist v. Or. Dep't of Agric.*, 553 U.S. 591, 601 (2008) (noting that to state a valid "class

of one" claim under the Equal Protection Clause, a plaintiff must allege that she had "been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment") (quoting *Willowbrook v. Olech*, 528 U.S. 562, 564 (2000)).

Plaintiff alleges that Deputy Weber's "selective enforcement" of the Board's rules treated him differently than "similarly situated passionate critics of the Board" and lacked a "rational basis under law." [Complaint, ECF No. 1 at 19-20]. Plaintiff's allegations fail to state an equal protection claim, for two reasons.

First, the mere recital of the elements of a claim is insufficient; a plaintiff must provide factual allegations supporting the elements. *Iqbal*, 556 U.S. at 678. More importantly, those factual allegations must address the "individual actions" of each defendant. *Id*. at 676; *see Marcilis*, 693 F.3d at 596-97. Plaintiff's elements-recital for his Equal Protection claim is unadorned with factual allegations addressing Deputy Weber specifically. Instead, the only factual allegations addressing a "similarly situated" individual concern *the Board's* selective enforcement of *its* rules. [*See* Complaint, ECF No. 1 at Page ID 13-14 ("For an example of Forest Hills' selective enforcement . . . Forest Hills did not retaliate against and censor [the public comment] even though the citizen speaker [criticized] the Superintendent")]. Allegations addressing the Board's supposed disparate treatment are insufficient to state a claim against Deputy Weber. *Iqbal*, 556 U.S. at 676. When, as is the case here, a plaintiff fails to plead with particularity what a defendant did to violate the asserted constitutional right, that defendant must be dismissed. *See, e.g.*, *Boxill v. O'Grady*, 935 F.3d 510, 518 (6th Cir. 2019).

Second, the allegations in the Complaint demonstrate that Deputy Weber had a rational basis to remove Plaintiff from the premises: the Board's determination that Plaintiff was out of order and its subsequent removal order. Indeed, the Sixth Circuit has recognized a significant

16

government interest in structuring school board meetings to avoid disruption. *See Lowery v. Jefferson Cnty. Bd. of Educ.*, 586 F.3d 427, 433-36 (6th Cir. 2009); *see also Ison v. Madison Local Sch. Dist. Bd. of Educ.*, 3 F.4th 887, 896 (6th Cir. 2021). And as discussed previously, an officer is justified in removing a speaker from a public meeting based on a presiding official's determination that the speaker is out of order. *See Leonard*, 477 F.3d at 361; *Burton*, 2022 U.S. Dist. LEXIS 28483, at *13-16, *affirmed*, 2022 U.S. App. LEXIS 32566; *Bernard*, 2015 U.S. Dist. LEXIS 59108, at *23-24; *Biggs-Leavy*, 2024 U.S. Dist. LEXIS 46575, at *20-21; *Gilmore*, 2022 U.S. Dist. LEXIS 210016, at *11-17; *see also Youkhanna*, 934 F.3d at 523. Thus, Plaintiff's equal protection claim fails as a matter of law.

## B. The Complaint Fails to State a Claim against the Hamilton County Sheriff's Office

Next, Plaintiff claims that HCSO violated his First and Fourteenth Amendment rights. [*See* Complaint, ECF No. 1 at Page ID 20-21]. The claims against HCSO must be dismissed for several reasons.

As an initial matter, HCSO is not a legal entity that is capable of being sued. *See Gipson v. Hamilton Cnty. Common Pleas Ct.*, No. 1:22-cv-764, 2023 U.S. Dist. LEXIS 208902, at *10-11 (S.D. Ohio Nov. 20, 2023), *report and recommendation adopted*, 2023 U.S. Dist. LEXIS 219951 (S.D. Ohio Dec. 11, 2023); *see also Lovelo v. Clermont Cnty. Sheriff's Off.*, No. 1:23-cv-114, 2023 U.S. Dist. LEXIS 227581, at *8 (S.D. Ohio Dec. 21, 2023). That alone requires dismissal of the claims against HCSO. True, the Complaint alleges claims against Deputy Weber in his official capacity. But a suit brought against a public official in his or her official capacity is treated as a suit against the relevant entity or policymaker, *see Graham*, 473 U.S. at 166, which in this case is Hamilton County Sheriff Charmaine McGuffey.

17

Putting aside whether Plaintiff has named the correct defendant, Plaintiff has failed to plausibly allege a claim under *Monell*. To hold a municipality liable under § 1983, it is not enough to show that a municipal employee violated someone's rights; there is no *respondeat superior* municipal liability under § 1983. *Crabbs v. Scott*, 800 F. App'x 332, 336 (6th Cir. 2020). Instead, a plaintiff must "demonstrate that, through its deliberative conduct, the municipality was the 'moving force' behind the alleged injury." *Alman v. Reed*, 703 F.3d 887, 903 (6th Cir. 2013) (quoting *Bryan Cnty. Bd. of Comm'rs v. Brown*, 520 U.S. 397, 404 (1997)). "A plaintiff does this by showing that the municipality had a 'policy or custom' that caused the violation of his rights." *Jackson v. City of Cleveland*, 925 F.3d 793, 828 (6th Cir. 2019) (quoting *Monell*, 436 U.S. at 694). There are four methods to showing that a county had such a policy or custom:

> (1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom of tolerance or acquiescence of federal rights violations.

*Id*. (quoting *Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013)).

Here, the Complaint fails to state a *Monell* claim against the Sheriff. First, because Plaintiff has failed to sufficiently plead a constitutional violation by Deputy Weber, Plaintiff's *Monell* claim against the Sheriff must also fail. "There can be no liability under *Monell* without an underlying constitutional violation." *Robertson v. Lucas*, 753 F.3d 606, 622 (6th Cir. 2014) (citing *Scott v. Clay Cnty., Tenn.*, 205 F.3d 867, 879 (6th Cir. 2000)). Moreover, the factual allegations in the Complaint deal almost exclusively with Deputy Weber's conduct at the March 20 public meeting. [*See* Complaint, ECF No. 1]. This is an improper attempt to impose liability upon the Sheriff under a theory of *respondeat superior*. *See, e.g.*, *D'Ambrosio v. Marino*, 747 F.3d 378, 389 (6th Cir. 2014).

Most importantly, Plaintiff has not adequately alleged any of the four methods of showing a policy or custom. Plaintiff asserts that HCSO has adopted a policy/custom-of-tolerance permitting its special deputies to automatically follow a county board's removal order without second-guessing the presiding official's First Amendment motives, and that HCSO has ratified Deputy Weber's conduct by declining to discipline him. [*See* Complaint, ECF No. 1 at Page ID 15-16, 20-21]. True, a plaintiff can establish municipal liability by demonstrating that the municipality has "fail[ed] to meaningfully investigate and punish allegations of unconstitutional conduct." *Wright v. City of Euclid*, 962 F.3d 852, 882 (6th Cir. 2020). However, as the Sixth Circuit has explained:

> Because municipal liability requires an unconstitutional "policy" or "custom," we have held that an allegation of a single failure to investigate a single plaintiff's claim does not suffice. *See Burgess v. Fischer*, 735 F.3d 462, 478-79 (6th Cir. 2013); *Thomas v. City of Chattanooga*, 398 F.3d 426, 433-34 (6th Cir. 2005). As a result, "a claim based on inadequate investigation" requires "not only an inadequate investigation in this instance," but also "a clear and persistent pattern of violations" in earlier instances. *David v. City of Bellevue*, 706 F. App'x 847, 853 (6th Cir. 2017). That is, "there must be multiple earlier inadequate investigations and they must concern comparable claims." *Stewart v. City of Memphis*, 788 F. App'x 341, 344 (6th Cir. 2019). In *Leach*, for example, "there was a record of approximately 14 other instances of similar abuse in a two-year period." *Meirs v. Ottawa County*, 821 F. App'x. 445, 453 (6th Cir. 2020) (citing *Leach*, 891 F.2d at 1247).

*Pineda v. Hamilton Cnty.*, 977 F.3d 483, 495 (6th Cir. 2020). Courts have similarly rejected a custom-of-tolerance theory of liability when there are only two or three prior instances of similar conduct. *Rodgers v. Cty. of Oakland*, No. 18-12832, 2021 U.S. Dist. LEXIS 218699, at *26 (E.D. Mich. Nov. 12, 2021) (collecting cases). In addition, "in a single-incident scenario, acts following the incident, even if sounding in ratification, could not causally produce the antecedent targeted conduct." *Rice v. Logan*, No. 6:21-CV-206-REW, 2022 U.S. Dist. LEXIS 136010, at *14 (E.D. Ky. Aug. 1, 2022); *see Pineda*, 977 F.3d at 495 ("an entity's failure to investigate the

plaintiff's specific claim will, by definition, come *after* the employee's action that caused the injury about which the plaintiff complains").

Here, Plaintiff has not sufficiently identified instances of prior misconduct in order to state a claim for municipal liability under *Monell*. *See Pineda*, 977 F.3d at 495; *Rodgers*, 2021 U.S. Dist. LEXIS 218699, at *26. Indeed, the only example of alleged prior misconduct concerned *the Board's* refusal to find a speaker out of order [*see* Complaint, ECF No. 1 at Page ID 13-14]; there are no allegations of prior misconduct by *Deputy Weber or HCSO*. Nor can Plaintiff demonstrate that a single incident of failing to discipline Deputy Weber after-the-fact was the cause of the antecedent constitutional deprivation. *See Rice*, 2022 U.S. Dist. LEXIS 136010, at *14; *Pineda*, 977 F.3d at 495. Therefore, Plaintiff's *Monell* claims must be dismissed. *See, e.g.*, *Dillon v. Hamlin*, --- F. Supp.3d ----, No. 1:23-cv-103, 2024 U.S. Dist. LEXIS 29487, at *11-20 (S.D. Ohio Feb. 21, 2024) (granting motion to dismiss *Monell* claims where complaint failed to adequately allege any method of showing policy or custom).

## IV. CONCLUSION

For the reasons stated herein, Deputy Weber and HCSO respectfully request the Court grant the Motion to Dismiss and dismiss the Complaint as it relates to Defendants Deputy Weber and HCSO.

<div style="margin-left:40%">

MELISSA A. POWERS
HAMILTON COUNTY PROSECUTOR

*/s/ Jerome A. Kunkel*
Jerome A. Kunkel (39562)
Kathleen C. Fischer (87937)
Bennet S. Weaver (102279)
Assistant Prosecuting Attorneys
*Attorneys for Defendants Jeffrey Weber*
*and Hamilton County Sheriff's Office*

</div>

20